## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Case No.  8:18-cv-3093-T-30SPF

**PHILLIP GRAY**,

                               Plaintiff,

v.

**UBER, INC. AND UNKNOWN INDIVIDUAL**,

                               Defendants.

## DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY ALL COURT PROCEEDINGS

Defendant, Uber Technologies, Inc. ("Uber" or "Defendant"), pursuant to the Federal Arbitration Act ("FAA"), moves to (1) compel Plaintiff, Phillip Gray ("Plaintiff"), to file his purported claims in arbitration as required by the binding arbitration provision to which he agreed, and (2) stay all court proceedings while the parties proceed in arbitration.

This motion should be granted for the reasons set forth in the accompanying memorandum of law in support.

## MEMORANDUM OF LAW

## INTRODUCTION

Uber seeks to enforce the parties' broad and straightforward arbitration agreement, which courts nationwide have deemed valid and enforceable.  Plaintiff Phillip Gray voluntarily created an Uber account and entered into an agreement with Uber to use Uber's mobile application ("Uber App") to connect with potential riders so that he could transport riders for a fare.  In doing so, Plaintiff agreed to be bound by Uber's Terms and Conditions for drivers, which contain a clear

and conspicuous arbitration provision ("Arbitration Agreement") that requires arbitration of the claims Plaintiff has asserted against Uber.

Under the terms of the Arbitration Agreement, Plaintiff agreed to arbitrate all disputes between himself and Uber, including but not limited to any disputes arising out of or related to the termination of their relationship, such as the claims asserted here. Plaintiff further agreed that an arbitrator—not a court—would resolve any disputes about the application, scope, or enforceability of the Arbitration Agreement.

In direct contravention of the Arbitration Agreement, Plaintiff filed a Complaint against Uber on October 10, 2018 in the Circuit Court for Hernando County, Florida. Plaintiff's Complaint—which is barely a full-page in length— does not explicitly outline any count against Uber. Rather, the Complaint generally contends that Uber violated Plaintiff's constitutional rights of "being innocent until proven guilty, the right to confront witnesses against him, and any defend his [sic] good name" purportedly by deactivating his Uber account due to sexual harassment allegations against him. On December 26, 2018, Uber timely removed Plaintiff's action to this Court under diversity jurisdiction.

Uber vigorously denies Plaintiff's allegations, but this Court need not (and, indeed, should not) resolve Plaintiff's claims to the extent he has any claim against Uber. Simply put, because Plaintiff's claims arise from the termination of his relationship with Uber, they are subject to the Arbitration Agreement, including the agreement to delegate to the arbitrator questions about the enforceability and scope of the arbitration clause.

Several courts, including those in the Middle District of Florida, have enforced identical (or nearly the same) arbitration agreements. *See Richemond v. Uber Technologies, Inc.*, No. 1:16-cv-23267-DPG (S.D. Fla. 2016); *Sena v. Uber Technologies Inc.*, No. CV-15-02418, 2016 WL

1376445, (D. Az. April 7, 2016); *Varon v. Uber Technologies, Inc.*, 15-cv-03650, 2016 WL 1752835 (D. Md. May 3, 2016); *Suarez v. Uber Technologies, Inc.*, 16-cv-00166, 2016 WL 2348706 (M.D. Fla. May 4, 2016); *Bruster v. Uber Technologies, Inc.*, 15-cv-2653, 2016 WL 2962403 (N.D. Ohio May 23, 2016).  Accordingly, Uber respectfully requests that this Court enter an order requiring that Plaintiff bring his claim in arbitration as contemplated by the Arbitration Agreement, and staying litigation in this action pending the completion of arbitration.

## **FACTUAL BACKGROUND**

I.     **The Parties Agreement to Arbitrate**

Uber is a technology company that offers a mobile smartphone software application (the "Uber App") to connect riders looking for transportation with available independent transportation providers ("drivers") based on their location.   *See* Declaration of Dylan Tonti ("Tonti Decl.") ¶¶ 3-5.  The Uber App allows the public to request transportation services from drivers in their local area. *Id.*

On August 15, 2015, Plaintiff signed up to use the Uber App to connect with potential riders using the "uberX" platform so that he could have the opportunity to transport those riders for a fare.  *Id.* ¶ 15.  In order to access the uberX platform to accept ride requests from prospective riders, drivers are required to electronically accept the terms and conditions of the applicable services agreement.  *Id.*¶ 7.  When Plaintiff logged on to the Uber App using his unique username and password, he had the opportunity to fully review the terms and conditions of Uber's RAISER Technology Services Agreement (the "Services Agreement") by clicking a hyperlink within the Uber App. *Id.* ¶¶ 8-10, as show below:



*Id.*, Ex. A.

   To advance past the screen with the hyperlink to the Services Agreement, Plaintiff had to confirm that he had first reviewed and accepted the Services Agreement by clicking "YES, I AGREE." *Id.* After clicking, "YES, I AGREE," Plaintiff was prompted to confirm review and acceptance of the Services Agreement *a second time*, a screen of which is below. *Id.*



*Id.*, Ex. B.

   On December 10, 2015, Plaintiff logged on to the Uber App and accepted the Terms and Conditions of the Services Agreement. *Id.*¶ 15.   Before his acceptance, Plaintiff was free to spend

as much time as he wished reviewing the Services Agreement on his smartphone or other electronic device. *Id.* Additionally, after confirming his acceptance, the Services Agreement was immediately sent to Plaintiff's driver portal, where Plaintiff could access the agreement to review at his leisure, either online on any device or by printing a copy. *Id.* ¶ 16.

Importantly, Section 15.3 of the Services Agreement contains an arbitration agreement (the "Arbitration Provision"), which broadly requires transportation providers ("drivers"), if they do not opt out, to arbitrate all disputes (with certain exceptions not relevant here) arising out of or related to the agreement or their relationship with Uber, including disputes alleging breach of contract, wage and hour claims, unfair competition, or any other claims brought under similar state and federal statutes. *Id.*, ¶ 17, Ex C.

The Arbitration Provision, in relevant part, reads as follows:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce. **This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates. . . .**
>
> Except as it otherwise provides, **this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration**, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration. Except as it otherwise provides, **this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial**, or by way of class, collective, or representative action.
>
> . . . **[S]uch disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge**. . .
>
> . . . **[t]his Arbitration Provision also applies, without limitation, to all disputes between You and . . Uber . . . including but not limited to any disputes arising out of or related to this Agreement and disputes arising out**

**of or related to your relationship with the Company, <u>including termination of the relationship</u>.**

*Id.*, Ex. C, Section 15.3(i) (Emphasis added).

The Services Agreement contains extensive cautionary notices, in enlarged font, which advised of the ramifications of agreeing to arbitration and of choosing not to opt-out, as well as of certain pending litigation against Uber.

> **IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis, expect as provided below, pursuant to the terms of the Agreement unless you choose to opt out of the Arbitration Provision.**

*Id.*, ¶ Ex. C, Section 15.3.

Further, even after twice confirming review and acceptance of the Services Agreement, a transportation provider is allowed an additional 30 days to opt-out of the Arbitration Provision, which could be accomplished as simply as sending an email to "optout@uber.com.[1]" The opt-out provision of the Arbitration Provision states a follows:

<u>Your Right To Opt Out of Arbitration</u>.

> **Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision. . . .**
>
> **Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

*Id.*, Ex. C., Section 15.3(viii).

---

[1] Transportation providers are also provided with a mailing address to send any opt-out request.

Case 8:18-cv-03093-JSM-SPF   Document 9   Filed 01/16/19   Page 7 of 17 PageID 49

Numerous independent transportation providers have opted out of the Arbitration Provision, and Plaintiff was repeatedly afforded the same opportunity to opt-out. *Id.* ¶ 19. However, upon review of Uber's business records reflecting the names of those individuals who have elected to opt out of a particular Arbitration Provision, Plaintiff did **not** opt out of the Arbitration Agreement within thirty days of his acceptance of that agreement.[2] *Id.*

## II.     Plaintiff's Complaint Allegations

Here, Plaintiff's purported claims against Uber are premised on the deactivation of his Uber Account—the termination of his relationship with Uber— purportedly because of the sexual harassment allegations made against him by a rider. *See generally Compl.* Thus, Plaintiff's dispute is precisely the type of dispute encompassed by the Arbitration Agreement, which encompasses "[a]ny dispute[] arising out of or related to [his Agreement with Uber] and disputes arising out of or related to [Plaintiff's] relationship with [Uber], *including the termination of the relationship*. Id., Ex. C. (emphasis added). Furthermore, the parties expressly agreed to arbitrate the very issue of arbitrability, delegating to the arbitrator any dispute "*arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision*."

---

[2] The opt out records, regardless of whether they are received by mail, overnight delivery, hand delivery, email or otherwise, are maintained in an electronic file in the regular course of Uber's business, and are records of Uber's regularly conducted activity of recording those individuals who have opted-out of the Arbitration Provision. Tonti Decl. ¶ 19. To the extent Plaintiff disputes that he failed to opt-out, he must present documentary evidence supporting same. *See Samadi v. MBNA Am. Bank, N.A.*, 178 Fed. Appx. 863 (11th Cir. 2006) (compelling the matter to arbitration despite plaintiff's claims that he opted out of the arbitration provision because plaintiff never objected to defendant's affidavit or requested an evidentiary hearing, and plaintiff bare claim that he never received the opt out mailing was insufficient); *Abdullah v. Am. Express Co.*, 2012 WL 6867675 (M.D. Fla. Dec. 19, 2012) (holding that a plaintiff's affidavit simply stating that he didn't receive opt out agreements were insufficient to create a genuine issue of fact when defendant affirmative showed proof that plaintiff received opt out information); *see Pope v. EZ Card & Kiosk LLC*, No. 15-61046-CIV-MARRA, 2015 WL 5308852 (S.D. Fla. Sept. 11, 2015) ("[t]he party opposing a motion to compel arbitration has an affirmative duty of coming forward with affidavits or deposition transcripts to show that the court should not compel arbitration.").

Despite consenting to these terms, Plaintiff filed this lawsuit in court, in direct violation of Arbitration Agreement. Thus, this Court should compel Plaintiff to bring his claims in arbitration.

## LEGAL ARGUMENT

## I.   PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION

Plaintiff entered into a valid and enforceable Arbitration Agreement and expressly agreed to pursue his purported claims through arbitration rather than in court.  Plaintiff further agreed that an arbitrator—not a court—shall address the scope and enforceability of the Arbitration Agreement.  The Court should, therefore, order Plaintiff to arbitrate his claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.

### A.   The FAA Governs the Arbitration Agreement

Enforceability of an arbitration agreement in federal court is generally governed by the FAA.  *See, e.g.*, *Caley v. Gulfstream Aerospace Corp.* 428 F. 3d 1359 (11th Cir. 2005).  "It is now basic hornbook law that the [FAA] . . . reflects both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263-64 (11th Cir. 2017) (citations omitted). The FAA gives arbitration agreements the same force and effect as other contracts under state law and preempts any state law to the extent that it imposes a greater burden on a party seeking to enforce an arbitration agreement. *Caley*, 428 F.3d at 1367-68.  Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or the allegation of waiver, delay, or a like defense to arbitrability." *Jones*, 866 F.3d at 1265; *see also Ruby–Collins, Inc. v. City of Huntsville, Ala.*, 748 F.2d 573, 576 (11th Cir. 1984)  ("federal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration").

Thus, "[t]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable "under ordinary state-law" contract principles, and (b) the claims before the Court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). As set forth below, the parties to this action entered into an enforceable arbitration agreement under Florida law and all of the claims asserted in this action fall directly within the scope of that agreement to arbitrate.

### B.  *Plaintiff Entered Into An Enforceable Agreement to Arbitrate*

Even if the Court does not enforce the delegation clause—and it must—the Court should nonetheless compel arbitration. To this end,  "[t]he threshold questions a district court must answer when determining whether a case may be properly referred to arbitration are: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement." *Hudson Global Res. Mgmt. v. Beck*, 2006 WL 1722353, *5 (M.D. Fla. 2006).  Though federal courts apply state contract law in determining the existence of an agreement to arbitrate, "federal policy *favoring* arbitration, is taken into consideration even in applying ordinary state law." *Caley,* 428 F. 3d at 1368 [emphasis added, citation omitted].  And, in any event, Florida likewise favors arbitration as a matter of public policy. *KFC Nat'l Mgt. Co. v. Beauregard*, 739 So. 2d 630 (Fla. 5th DCA 1999).

Here, the parties voluntarily entered into a written mutual agreement to arbitrate any disputes, including disputes relating to the termination of their relationship, as evidenced by Plaintiff's acceptance of the Services Agreement and his failure to timely opt-out of the Arbitration Provision. This is more than sufficient to establish Plaintiff's acceptance of the Arbitration Agreement. *See Dorward v. Macy's Inc*., No. 2:10–cv–669–FTM–29DNF, 2011 WL 2893118,

*11 (M.D. Fla. July 20, 2011) (plaintiff's signature on a new hire acknowledgment form, which referred to a brochure containing the arbitration agreement, was sufficient to show the plaintiff assented to the arbitration agreement and "[p]laintiff's alleged ignorance of the contents of [the brochure] ha[d] no bearing on her duty to arbitrate according to its terms"); *Sultanem v. Bright House Networks, L.L.C.*, No. 8:12–cv–1739–T–24, 2012 WL 4711963, *2 (M.D. Fla. Oct. 3, 2012) (plaintiff's denial of receipt of arbitration agreement alone not sufficient to create issue of fact as to existence of arbitration agreement where plaintiff signed work orders acknowledging agreement containing arbitration clause); *Jones*, 866 F.3d at 1266 (plaintiff was given at least three hours on his first date of work to read and sign his employment paperwork, including an arbitration agreement).

Courts nationwide, including this District, overwhelmingly have enforced such agreements. *See Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1326-28 (M.D. Fla. 2017)*; Sena v. Uber Technologies Inc.*, No. CV-15-02418, 2016 WL 1376445, (D. Az. April 7, 2016); *Varon v. Uber Technologies, Inc.*, 15-cv-03650, 2016 WL 1752835 (D. Md. May 3, 2016); *Suarez v. Uber Technologies, Inc.*, 16-cv-00166, 2016 WL 2348706 (M.D. Fla. May 4, 2016); *Bruster v. Uber Technologies, Inc.*, 15-cv-2653, 2016 WL 2962403 (N.D. Ohio May 23, 2016)*. Accordingly, this Court should find that Plaintiff assented to be bound by the terms of the Arbitration Provision, and, accordingly, has no grounds to argue the Arbitration Provision is not enforceable under Florida contract law or otherwise.

### C. The Arbitration Provision Delegates the Threshold Determination Regarding Arbitrability of Plaintiff's Claims to the Arbitrator

In the first instance, the parties may agree to arbitrate gateway questions of arbitrability, including the enforceability, scope, applicability, and interpretation of the arbitration agreement. *Jones*, 866 F.3d at 1264, citing to landmark case *Rent-a-Center, W., Inc. v. Jackson*, 560 U.S. 63,

68-69 (2010) ("[a]n agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other").  The arbitrator, rather than the court, must address the threshold question of arbitrability if the parties so agreed.  *See Jones*, 866 F.3d at 1264 (explaining that an antecedent agreement known as a "delegation provision" is enforceable and affirming that "[w]hen an arbitration agreement contains a delegation provision – committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable – the courts only retain jurisdiction to review a challenge of that specific provision").

On January 8, 2019, the United States Supreme Court reaffirmed its own decision in *Rent-A-Center* and adopted the Eleventh Circuit's decision in *Jones* and similar cases and held that when the parties' contract delegates the question of the arbitrability of a dispute to an arbitrator, a court may not override the contract, even if the court thinks that the argument that the arbitration agreement applies to a dispute is wholly groundless.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17-1272, 2019 WL 122164 at *3 (U.S. Jan. 9, 2019). The Court was clear that a court's determination in such situations is only to determine if a valid arbitration agreement exists:  "This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by "clear and unmistakable" evidence.  To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. See 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  *Id.* at *4 (citations omitted).

Here, the Arbitration Provision to which Plaintiff agreed clearly and unmistakably provides that it is a "full and complete agreement relating to the formal resolution of disputes arising out of

this Agreement," and that "[d]isputes arising out of or relating to interpretation or application of this Arbitration Provision, ***including the enforceability, revocability or validity of the Arbitration Provision*** or any portion of the Arbitration Provision" shall be decided by an arbitrator, not a court. Tonti Decl., Ex. C (emphasis added).  Therefore, any question as to the validity, enforcement and interpretation of the of the Arbitration Agreement, which is included in the Agreement, and whether it applies to this dispute, has been delegated to, and must be decided by, the arbitrator in the first instance.  *See American Express Co. v. Italian Colors Rest*., 133 S. Ct. 2304, 2309 (2013) (noting that the text of the FAA "reflects the overarching principle that arbitration is a matter of contract" and "courts must rigorously enforce arbitration agreements according to his terms, including terms that specify with whom the parties choose to arbitrate his disputes").

This is not a novel concept. Indeed, multiple federal district courts have examined the same Uber services agreement containing the same Arbitration Provision, and determined that any challenges regarding the validity of the Arbitration Provision must be decided by an arbitrator and not by the courts.  In *Suarez*, a court in this District, enforcing the same Arbitration Provision governing this case, held "Defendants' motion should be granted on this basis alone and adjudication of Plaintiff's attacks on Arbitration Provision should be left to the arbitrator because it is clear and unmistakable that the parties agreed to arbitrate arbitrability."  *Suarez*, 2016 WL 2348706 at *4; *see also, Sena* 2016 WL 1376445 at *4 ("Given the plain language of the Delegation Clause, the Court finds that the parties clearly and unmistakably intended to arbitrate questions of arbitrability"); *Richmond*, 263 F. Supp. 3d at 1317 (adopting the reasoning in *Suares* relating to an identical delegation provision from an Uber contract) *Varon*, 2016 WL 1752835 at *6 ("the plain language of the delegation clause, severed from the Rasier Agreement, clearly and unmistakably provides for the threshold issue of arbitrability to be determined by the

arbitrator"); *Bruster*, 2016 WL 2962403 at *5 ("Because the June 2014 delegation provision is valid, this Court does not decide whether the arbitration provision is enforceable. The June 2014 delegation provision delegates issue of arbitrability to the arbitrator, not the Court").

Additionally, in *Rimel*, a magistrate judge in this District recommended granting Uber's motion to compel arbitration, explaining that, under Florida law, "[t]he delegation provision in the Arbitration Provision is evidence of the parties' clear and unmistakable agreement that disputes not expressly excluded from arbitration will be decided by the arbitrator, not a court." *See* Report & Recommendation, *Rimel*, Case No. 6:15-cv-2191, Dkt. 61 at p. 15 (M.D. Fla. Aug. 4, 2016). Agreeing, District Court Judge Mendoza ultimately granted Uber's motion to compel arbitration, in part, because the "[t]he Delegation Clause clearly and unmistakably delegates questions of arbitrability to the arbitrator." *See Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1325 (M.D. Fla. 2017). For the same reasons as those noted by the *Suarez*, *Richmond*, *Bruster*, *Varon*, *Sena*, and *Rimel* courts, and as mandated by the Supreme Court's recent decision in *Henry Schein*, any threshold question of arbitrability must be determined by the arbitrator.

### D.  *Plaintiff's Claims Fall Within The Scope of His Agreement To Arbitrate*

Even if the parties had not expressly delegated the issue of arbitrability to the arbitrator, it is clear this dispute is subject to arbitration. *Hudson Global Res. Mgmt. v. Beck*, No. 805-CV-1446T27TBM, 2006 WL 1722353, 2006 U.S. Dist. LEXIS 40904, *3 (M.D. Fla. June 20, 2005). Plaintiff's claims are undoubtedly within his agreement to arbitrate "[a]ny dispute[] arising out of or related to [his Agreement with Uber] and disputes arising out of or related to [Plaintiff's] relationship with [Uber], ***including the termination of the relationship.***"

Here, the purported claims asserted by Plaintiff fall squarely within the scope of the parties arbitration agreement because it is premised on the deactivation of his Uber Account—the

termination of his relationship with Uber— allegedly because of sexual harassment allegations against him made by a rider.  Thus, the Arbitration Provision requires arbitration of all disputes arising out of or related to the Services Agreement, including Plaintiff's dispute relating to the deactivation of his Uber account. Thus, Plaintiff's claim is indisputably within the express scope of the Arbitration Provision.

## II.   THIS COURT SHOULD STAY ALL COURT PROCEEDINGS UPON COMPELLING PLAINTIFF TO ARBITRATION

When a valid written agreement to arbitrate exists and covers the matter in dispute, the FAA commands federal courts to stay any ongoing judicial proceedings and compel arbitration. *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76, 109 S. Ct. 1248, 1253-54 (1989). Specifically, Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement**, providing the applicant for the stay is not in default in proceeding with such arbitration.

*See* 9 U.S.C. § 3 (emphasis added).

A stay of arbitrable claims is mandatory: "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4); *see also Klay v. Pacificare Health Sys.*, 389 F.3d 1191, 1203-04 (11th Cir. 2004) ("For arbitrable issues, the language of Section 3 indicates that the stay is mandatory.")

Here, as fully explained above, Plaintiff entered into a valid and enforceable agreement to arbitrate disputes against Uber, and the disputes raised in this action fall squarely within that

agreement.  Accordingly, this Court should stay all proceedings in this Action upon compelling Plaintiff to arbitrate his claims.  *Marc v. Uber Techs., Inc.*, Case No. 2:16-CV-579-99MRM, 2016 WL 7210886 (M.D. Fla. Dec. 13, 2016) (enforcing arbitration agreement against claims brought by individuals proving transportation services and staying case pending arbitration).

## CONCLUSION

WHEREFORE, Uber respectfully request this Honorable Court: (1) enter an Order compelling Plaintiff to bring his claim in arbitration, per the terms of the Agreement; and (2) stay all Court proceedings and deadlines while this matter proceeds in arbitration.

## RULE 3.01(g) CERTIFICATION

**I HEREBY CERTIFY** that, pursuant to Local Rule 3.01(g) of the District Court for the Middle District of Florida, counsel for Uber conferred with counsel for Plaintiff and Plaintiff informed Uber's in-house counsel that he opposes this Motion.

Dated:  January 16, 2019

Respectfully Submitted:

**UBER TECHNOLOGIES, INC.**

By:/s/ *Edward M. Mullins*
Edward M. Mullins, Esq.
emullins@reedsmith.com
FBN:  863920
Brandon T. White, Esq.
FBN: 106792
bwhite@reedsmith.com
**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131
Phone: 786.747.0222
Fascimile: 786.747.0299
bwhite@reedsmith.com
***Counsel for Defendant Uber Technologies, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 16, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel and parties of record, including:

Phillip Gray, Pro se
10105 Bannister Street,
Spring Hill, FL 34608
pwgray@pwgray.com
pwgray53@gmail.com
(317) 717-5179

*/s/ Edward M. Mullins*
Edward M. Mullins, Esq.
